## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LISA FOSTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No. 05-CV-305-TCK-FHM** |
| | ) | |
| **DONALD THOMPSON, CREEK** | ) | |
| **COUNTY, AND THE STATE OF** | ) | |
| **OKLAHOMA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

Before the Court is the State of Oklahoma's ("State") Motion for Summary Judgment (Doc. 36),  Supplemental Motion for Summary Judgment (Doc. 89),[1] and Defendant Donald Thompson's Amended Motion for Partial Summary Judgment (Doc. 50).

**I.     Background**

In 1988, Plaintiff Lisa Foster ("Plaintiff") was hired by then-Creek County District Judge Donald Thompson ("Thompson" or "Defendant Thompson") as his court reporter.  Sometime in September of 2000, Plaintiff first noticed an unusual noise, described by her as a "sh-shh," in Thompson's courtroom.  She again heard the noise in January or February 2001 and realized that said noise was coming from behind Thompson's judicial bench.  According to Plaintiff's testimony, Plaintiff then noticed an opening between a drawer and door panel on Thompson's desk, wherein she was able to see behind the desk.  Through this opening, Plaintiff viewed Thompson with a plastic tube on his penis ("pump" or "penis pump") and also viewed Thompson's hand squeezing

---

[1] The State's Supplemental Motion for Summary Judgment was filed in accordance with this Court's Order of March 23, 2007.  Therein, the Court permitted the State to file an amended Answer in order to raise the *Faragher/Ellerth* defense to Plaintiff's claim for Title VII hostile work environment.  (*See* Doc. 78).  The Court also directed the State to "supplement its Motion for Summary Judgment with any argument related to the *Faragher/Ellerth* defense."  (Doc. 78 at 2.)

something, which prompted the "sh-shh" noise.  In March 2001, during a jury trial in Thompson's

courtroom, Plaintiff again heard the "sh-shh" noise and saw Thompson with the pump on his penis.

At the conclusion of the trial, Plaintiff borrowed a Polaroid camera and took three pictures of the

pump underneath Thompson's bench.  According to Plaintiff's testimony, she saw Thompson's

penis and viewed him using the pump on other occasions after March 2001 – namely, during the

*State v. Crews* trial in 2002; the *State v. Brooks* trial in October 2002; the *State v. Vomberg* trial in

May 2003; and during the *State v. Moss* trial in August 2003.  On another occasion, during a trial

in October 2002, Plaintiff maintains that she saw Thompson shave his scrotum during an attorney's

closing argument.  Plaintiff also testified that she saw Thompson put lotion on his penis on several

occasions, as well as urinate in his trash can.  In total, Plaintiff claims that she saw Thompson

expose his penis while on the bench at least fifteen times.

Although Plaintiff reported what she had seen to her family and to fellow court reporter

Theresa Clee, she did not voluntarily report Thompson's behavior to any authority.  Plaintiff decided

that she either had to "keep [her] mouth shut or [she] had to quit," but that she did not want to quit

because her income was greater than her husband's and she enjoyed flexible hours.  (Trial Tr. at 113,

*State of Oklahoma v. Donald D. Thompson*, CF-2005-16, June 26, 2006, Ex. 3 to State's Mot. for

Summ. J.)[2]

In August 2003, however, Plaintiff was forced to report what she had seen.  It was during

the *Moss* trial that other individuals heard the "sh-shh" sound of Thompson's penis pump.

Specifically, while testifying on the witness stand, Detective Mike Reed heard the sound and

---

[2]   The parties submitted testimony from the criminal jury trial against Defendant Thompson.
Thompson was convicted of four felony counts of indecent exposure and later sentenced to four
years in prison.

observed Thompson with something "white and hard" and "plastic looking" in Thompson's right hand.  According to Reed's testimony, every time he observed Thompson's hand move up and down, Reed would hear the "sh-shh" noise.  (Trial Tr. at 168, *State of Oklahoma v. Donald D. Thompson*, CF-2005-16, June 20, 2006, Ex. 1 to  State's Mot. for Summ. J.)  Captain Brent Green and Chief Jim Wall of the Sapulpa Police Department were present in the courtroom when Detective Reed was on the witness stand and also heard the noise.  After Reed testified during the trial, Green and Wall asked Reed if he had heard the noise, and Reed told them what he had seen.  Reed and Green then went behind Thompson's bench and observed the pump laying on the floor.  Wall thereafter telephoned the Council on Judicial Complaints ("Council") to lodge a complaint against Defendant Thompson.  An investigator with the Council eventually telephoned Plaintiff, and Plaintiff was subpoenaed to testify before the Council.

After testifying before the Council on September 25, 2003, Plaintiff went to work the next day.  Defendant Thompson allegedly called her into his office and asked Plaintiff if she was looking for another job.  According to Plaintiff's testimony, Thompson also asked Plaintiff if she had something she "need[ed] to tell the police about [him]."  (Trial Tr. at 121, *State of Oklahoma v. Donald D. Thompson*, CF-2005-16, June 26, 2006, Ex. 1 to Pl.'s Resp. to State's Mot. for Summ. J.) (hereinafter "6/26/06 Tr., Ex. 1 to Pl.'s Resp. to State's Mot. for Summ. J.")  Plaintiff told Thompson that she "already told someone in Oklahoma City," and Thompson asked her to tell him what she said in Oklahoma City.  (*Id.* at 122.)  Plaintiff asked Thompson if he was firing her, and, according to Plaintiff's testimony, he said "yes, I think that would be the best."  (*Id.*)

Thompson thereafter wrote Plaintiff a letter, dated December 18, 2003, wherein he stated that he wanted "to initiate a resolution to the apparently strained relationship that ha[d] developed between [Plaintiff and Thompson]."  (Ex. 5 to State's Mot. for Summ. J.)  In said letter, Thompson

asked Plaintiff to "call [him] or drop in to inform [him] of [whether she wanted to resign] on or before December 21, 2003 by 9:00 a.m." (*Id.*)  There is no evidence in the record indicating that Plaintiff ever contacted Thompson; however, Plaintiff's Equal Employment Opportunity Commission ("EEOC") General Intake Questionnaire  indicates that she was "re-hired" by Defendant Thompson in October 2003 and then terminated again in January 2004.  (*See* Ex. F to Def. Thompson's Am. Mot. for Partial Summ. J. at 3.)

As characterized by the State, "[i]n January, Thompson informed the Court Administrator that Plaintiff, an at-will employee, had been absent from work and that Thompson was terminating her." (State's Supplemental Mot. for Summ. J. at 3; *see also* Trial Tr. at 164, *State of Oklahoma v. Donald D. Thompson*, CF-2005-16, June 27, 2006, Ex. 4 to State's Mot. for Summ. J.) (Thompson's testimony that he "never turned into Oklahoma City that she was ever terminated or ever off the job for one day until, I think, the first of January") (hereinafter "6/27/06 Tr.")  On January 9, 2004, Plaintiff sent a letter to Mr. Howard Conyers, Court Administrator, wherein she stated that she received notice from the Administrative Office on January 5, 2004 that Defendant Thompson had called the Court Administrator's office to terminate her.  (Ex. 6 to State's Mot. for Summ. J.) Plaintiff stated that she had been present at the courthouse "every working day from October 27, 2003 until January 5, 2004," and that during this time, she filled in for other reporters who covered Thompson's dockets.  (*Id.*)  Plaintiff also stated that she "had no intention of quitting my job here in Creek County, and did not quit." (*Id.*)  Finally, Plaintiff informed the Court Administrator that she was going to start "[her] new job in Tulsa County on Monday, January 12, 2004." (*Id.*)[3]

_____

[3]  There is some dispute among the parties as to the precise date of Plaintiff's termination. For example, in Defendant Thompson's Amended Motion for Partial Summary Judgment, he contends that Plaintiff's employment with him ended on January 5, 2004.  (*See* Def. Thompson's Am. Mot. for Partial Summ. J. Undisputed Fact Nos. 1, 23, 26, 27.)  Thompson cites to Plaintiff's

Plaintiff thereafter filed suit, asserting claims against the State for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, wrongful discharge, and intentional infliction of emotional distress.  Plaintiff further asserted claims against Defendant Thompson for violation of 42 U.S.C. § 1983, tortious interference with employment, and intentional infliction of emotional distress.[4]

## II.    Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id.* (citation omitted).  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential

---

EEOC filings – namely, the General Intake Questionnaire, Discharge Questionnaire, and Charge of Discrimination – in support of the contention that Plaintiff's employment was terminated on this date.  (*See* General Intake Questionnaire, Ex. F to Def. Thompson's Am. Mot. for Partial Summ. J. at 2 (listing "dates of employment" as "September 15, 1988 to January 5, 2004" ); Discharge Questionnaire, Ex. I to Def. Thompson's Am. Mot. for Partial Summ. J. at 2 (stating "I was discharged on 1/5/04" ); Charge of Discrimination, Ex. J to Def. Thompson's Am. Mot. for Partial Summ. J. at 1 (listing "1-05-2004" as "date(s) discrimination took place").)  Plaintiff's response brief alleges a termination date of September 26, 2003, however.  (Pl.'s Resp. to State's Mot. for Summ. J. Fact No. 24; Pl.'s Resp. to Def. Thompson's Am. Mot. for Partial Summ J. Fact No. 24.)

[4] Zelma Hindman, who served as Thompson's secretary/bailiff has also brought suit against the State and Thompson, alleging identical claims as have been brought by Plaintiff.  Hindman's suit is also before this Court.  (*See* Case No. 05-cv-306-TCK.)

to that party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### III.    State of Oklahoma's Motion for Summary Judgment

The State's Motion for Summary Judgment asserts that summary judgment is proper as to Plaintiff's Title VII and wrongful discharge claims.  (*See* State's Mot. for Summ J. 15-18.)[5]  At the outset, the Court notes that although the State's Motion for Summary Judgment was eighteen pages in length, only three and a half of those pages provide any argument as to why summary judgment should be granted in favor of the State.  Further, with regard to certain claims, there is absolutely no legal citation or analysis provided.  The Court simply finds this unacceptable.  Such a paltry job by the Office of the Attorney General, in addition to demonstrating a complete lack of effort and diligence, does a disservice to the citizens of the State it purports to represent.  The State seems to believe that it is the Court's job to create, imply, or research arguments on its behalf.  Such is not the case, however, and the State should be more thorough in its argument and legal research in future briefs before this Court.[6]

---

[5]  The State also argued that summary judgment was proper as to Plaintiff's section 1983 claim.  However, inclusion of this claim in its Motion for Summary Judgment was in error, as this claim is asserted only against Defendant Thompson.  (*See* Pl.'s Compl. ¶ 12 (stating that "**Judge Thompson** . . . deprived Ms. Foster of her constitutional rights, including her rights of Equal Protection, Free Speech and Freedom of Association, in violation of 42 U.S.C. § 1983"); Pl.'s Resp. to State's Mot. for Summ. J. 12 ("The State seeks summary judgment on Foster's 42 U.S.C. § 1983 claim.  However, she has alleged that claim against Thompson, not the State, as is made clear by paragraph 12 of Ms. Foster's First Claim for Relief . . . .").)  Accordingly, the Court will not respond to this argument.

[6]  The Court also notes that the State did a poor job of identifying and separating the exhibits attached to its briefing.  For example, both Exhibits 3 and 4 to the State's Motion for Summary Judgment include testimony from Plaintiff Foster in the case of *State of Oklahoma v. Donald D. Thompson*, CF-2005-16.  Exhibit 4, however, also includes one page of testimony from Thompson, without any clear identification that the witness testifying is no longer Foster, but is instead Thompson.  (6/27/06 Tr. at 164.)

A.      **Title VII**

Plaintiff has alleged two claims against the State pursuant to Title VII.  Specifically, Plaintiff claims that the State, by and through Judge Thompson: (1) subjected her to a sexually hostile work environment; and (2) terminated her employment in retaliation for opposing that environment.[7]  The State argues that summary judgment is appropriate because: (1) Plaintiff is prevented from asserting any claim under Title VII pursuant to the personal staff exemption; (2) the State is protected by the *Faragher/Ellerth* defense; and (3) Plaintiff cannot demonstrate that Defendant Thompson discriminated against her on the basis of her sex.

1.      **Personal Staff Exemption**

In its Supplemental Motion for Summary Judgment, the State argues for the first time that Plaintiff does not fall within the classification of individuals to which Title VII applies.  Title VII exempts from its definition of "employee" "any person chosen by [an elected] officer to be on such officer's personal staff" ("personal staff exemption").  42 U.S.C. § 2000e(f).[8]  According to the State, because Plaintiff was a member of the "personal staff" of Thompson, a person "elected to public office," she is not an "employee" who enjoys the protections offered by Title VII.  Plaintiff responds by arguing that the State has waived its ability to now assert this argument because it did not previously plead the personal staff exemption as an affirmative defense.

_____

[7]  The State fails to clearly distinguish these two claims in its briefing before the Court.

[8]  The Tenth Circuit has noted that the personal staff exemption arguably does not apply when the plaintiff's claims are based on the section of Title VII that makes it illegal to discriminate against any *individual*, rather than any "employee."  *Starrett v. Wadley*, 876 F.2d 808, 821 n.18 (10th Cir. 1989) (citing 42 U.S.C. § 2000e-2(a)).  However, the Tenth Circuit held that it was "clearly the intent of Congress that the term 'employee' . . . should apply to any person who has a right to bring an action under the Act . . . ."  *Starrett*, 876 F.2d at 821 n.18 (internal citations omitted).

As stated by the Fifth Circuit in *Oden v. Oktibbeha County, Mississippi*, 246 F.3d 458, 467 (5th Cir. 2001), "the personal staff [exemption] is an affirmative defense that must be pleaded under [Federal Rule of Civil Procedure] 8(c)." (citing *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 327 (5th Cir. 1981) (concluding that an exemption under the Fair Labor Standards Act is an affirmative defense that is waived if not pleaded); *Brennan v. Valley Towing Co.*, 515 F.2d 100, 104 (9th Cir. 1975) (holding that an exception under the Fair Labor Standards Act must be pleaded as an affirmative defense); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1271 (3d. ed. 2004)).  The State therefore waived the personal staff exemption, as it failed to include such defense in both its original and Amended Answer (*See* Docs. 6 & 82).  *See Oden*, 246 F.3d at 467 (stating "Appellants waived the personal staff exception by failing to raise it in a responsive pleading").[9]

## 2. *Faragher/Ellerth* defense

The State asserts the *Faragher/Ellerth* defense, arguing that it cannot be held liable for the actions of Thompson, its employee.  *See Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998);

---

[9] In a somewhat incoherent argument, it appears the State attempts to argue that the personal staff exemption can be asserted at any time because it is an issue of subject matter jurisdiction. (*See* State's Reply to Pl.'s Resp. to Supplemental Mot. for Summ. J. 2.)  However, given *Oden's* clear language indicating that a party waives its right to assert the personal staff exemption if said defense is not affirmatively stated in a responsive pleading, the Court rejects any such argument made by the State.

The Court also rejects the State's attempt to distinguish *Oden* by arguing that *Oden's* holding was "based in large part upon the fact that the defendant had not plead the personal staff exemption until ***after trial***." (*See id.* 3.)  The Fifth Circuit did not appear to limit its holding to only those cases in which the defense was raised after trial, and, the Fifth Circuit's rationale that a party should not be able to "ambush a plaintiff with an unexpected defense" applies equally to this case.  *Oden*, 246 F.3d at 467.  Defendant raised the personal staff exemption in its Supplemental Motion for Summary Judgment, which was filed after the discovery period had terminated in this case.  Therefore, even if the Fifth Circuit did intend to limit its holding in the manner suggested by the State, which the Court questions, the rationale employed in *Oden* supports waiver of the exemption in this case.

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  Pursuant to said defense, employers are not automatically liable for hostile work environment sexual harassment perpetrated by their employees. However, if the perpetrator of the hostile work environment sexual harassment is a supervisor with immediate or successively higher authority over the plaintiff, a plaintiff can establish vicarious liability on the part of the employer in one of two ways.  First, a plaintiff can demonstrate that the supervisor's behavior "culminate[d] in a tangible employment action" against the plaintiff (*e.g.*, discharge, demotion, or undesirable reassignment).  *Ellerth*, 524 U.S. at 765.  Under such circumstances, the employer is vicariously liable for the supervisor's behavior, and no affirmative defense is available.  *Id.* at 762-63, 765.  Second, even absent a tangible employment action, an employer will still be liable for a hostile work environment created by one of its supervisory employees unless it proves, by a preponderance of the evidence, a two-pronged affirmative defense: (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

The Court finds the State is unable to avoid liability based upon the *Faragher/Ellerth* defense.  The record clearly demonstrates that Thompson was Plaintiff's supervisor, and an adverse employment action was taken against Plaintiff when Thompson terminated her from employment. *See Penn. State Police v. Suders*, 542 U.S. 129, 137 (2004) (stating that under *Faragher* and *Ellerth*, employers are strictly liable for harassment that "culminates in a tangible employment action, such as *discharge*, demotion, or undesirable reassignment") (emphasis added); *McInnis v. Fairfield Cmtys.*, 458 F.3d 1129, 1141 (10th Cir. 2006) (stating the "*Faragher/Ellerth* defense does not apply in cases where the employer takes an adverse employment action) (holding that defense did not

9

apply in case before it because defendant terminated plaintiff's employment); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004) (stating that an "adverse employment action includes [but is not limited to] those acts that 'constitute[ ] a significant change in employment status, such as . . . *firing . . . .*'") (emphasis added) (internal citations omitted).

The State argues that "although [Plaintiff] characterizes the termination of her employment as being fired by [Thompson], she effectively resigned" by "refusing to discuss her situation with [Thompson]" after he sent her the December 18, 2003 letter.  (*See* State's Supplemental Mot. for Summ. J. 7.)  The Court finds such argument unpersuasive.  First, the States admits Thompson fired Plaintiff.  (*See* State's Mot. for Summ. J., Uncontroverted Fact No. 71 (stating "Thompson fired [Plaintiff]").)  Further, the State offers no legal support for the contention that Thompson's December 18, 2003 letter somehow "undid" his previous firing of Plaintiff for purposes of the adverse employment action analysis.  Even if such authority existed, the State admits that "[i]n January, Thompson informed the Court Administrator that Plaintiff, an at-will employee, had been absent from work and that Thompson was terminating her."  (State's Supplemental Mot. for Summ. J. 3; *see also* 6/27/03 Tr. at 164.)  Therefore, whether occurring in September or January, it is clear Thompson terminated Plaintiff.  Finally, the State offers no legal or factual support for the contention that Plaintiff's failure to respond to Thompson's December 18, 2003 letter amounted to a "resignation."  Although the letter asks Plaintiff to "inform [Thompson] of her decision [whether to resign] on or before December 21, 2003," nothing in said letter indicates that a failure to so respond constitutes a resignation from employment.  (*See* Ex. 5 to State's Mot. for Summ. J.)  Nor has the State offered any other evidence from the record supporting such a conclusion.

### 3.    "Because of Sex"

Finally, the State argues that summary judgment is proper as to Plaintiff's Title VII claims

10

because Plaintiff is unable to demonstrate that Thompson "discriminate[d] on the basis of sex as to his bizarre behavior."  (State's Mot. for Summ. J. 16.)  In order to succeed on her hostile work environment claim, Plaintiff "must produce evidence that she was the object of harassment *because of her gender.*"  *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (emphasis added). Title VII is not a code of workplace conduct, nor was it "designed to bring about the magical transformation in the social mores of American workers." *Velasquez v. Frontier Med. Inc.*, 375 F. Supp. 2d 1253, 1265 (D.N.M. 2005) (citing *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1538 (10th Cir. 1995)).  Rather, Title VII targets discrimination based on gender, and "if the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment."  *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994).  As explained by the Supreme Court, the critical issue "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

In the instant case, Plaintiff is unable to demonstrate that Thompson's allegedly harassing behavior – namely, the fact that Thompson used the penis pump, put lotion on his penis, shaved his scrotum, and urinated in a trash can – was due to Plaintiff's gender.  In assessing whether such conduct was due to Plaintiff's gender, the focus of the analysis is on Thompson's motivation for the offensive conduct. *See Oncale*, 523 U.S. at 79-80 (examining the question of what "because of sex" means, focusing on the harasser's motivation for the offensive conduct and reaffirming that the critical issue is discriminatory intent); *Succar v. Dade County Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) (analyzing alleged harasser's motive in determining whether harassment was "because of sex"); *Gillming v. Simmons Indus.*, 91 F.3d 1168, 1171-72 (8th Cir. 1996) (affirming a jury

instruction that required the jury to find that the harassing acts were intentional and motivated by gender). Although the Court finds Thompson's behavior incredibly offensive, vulgar, and crude, Plaintiff has not met its obligation under Rule 56(e) in demonstrating "specific facts showing that there is a genuine issue for trial" as to the motivation behind Thompson's behavior. Fed. R. Civ. P. 56(e). Specifically, Plaintiff has failed to present *any* facts regarding Thompson's motivation, much less any facts demonstrating that Thompson's behavior was the result of any hostility toward women. *See Linville v. Sears, Roebuck and Co.*, 335 F.3d 822, 824 (8th Cir. 2003) (considering same in finding that plaintiff failed to provide evidence that the alleged harassment was "based on sex"). Absent facts demonstrating that Thompson's conduct was motivated in some manner by Plaintiff's gender, Plaintiff's claim cannot survive summary judgment.

Further, the record reflects that Thompson's offensive behavior took place in a courtroom which was comprised of both men and women, suggesting that Thompson was indiscriminate in terms of who might be affected by the fact that he was committing such acts. While the Court agrees with Plaintiff's argument that in some circumstances, exposure of men and women to sexually offensive material or conduct can be the basis for a hostile work environment claim, Plaintiff must still demonstrate evidence of discriminatory intent. Thus, although the mere fact that both men and women could have been exposed to Thompson's conduct is not dispositive, it is indicative of the lack of discriminatory intent on the part of Thompson. *See Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996) (stating "sex-neutral hostile conduct cannot be used to support a hostile environment claim [because] Title VII does not protect employees from hostile conduct that is not based on their protected status"); *Nigro v. St. Tammany Parish Hosp.*, 377 F. Supp. 2d 595, 600-01 (E.D. La. 2005) (finding there was no evidence that the allegedly harassing comments were directed at plaintiff because of his sex when such comments were made to males

12

and females); *Landrau Romero v. Caribbean Rests., Inc.*, 14 F. Supp. 2d 185, 190 (D. P.R. 1998) (finding that the "record is replete with examples of [the alleged harasser's] behavior in front of both sexes" and that the harasser "did not reserve his tasteless comportment for male employees").

Moreover, because Thompson's actions were completed behind his bench and in a secretive manner, the evidence provided to the Court suggests that Thompson was unaware that anyone, much less Plaintiff, was able to view his conduct.  In fact, in Plaintiff's prior testimony, she admitted she "[didn't] think [Thompson] knew [she] could see him."  (6/26/06 Tr. at 142, Ex. 1 to Pl.'s Resp. to State's Mot. for Summ. J.)  Further, when asked whether she believed that Thompson was "trying to expose himself," Plaintiff responded that she "[didn't] know what he was trying to do."  (*Id.*) The inference that Plaintiff's viewing of Thompson's activity was accidental suggests that said activity was not directed at Plaintiff and that Plaintiff's gender played no part in the alleged harassment.  *See Hanley v. Chevy Chaser Magazine, LLC*, No. 05-6517, 2006 WL 2787036, at *3 (6th Cir. Sept. 26, 2006) (finding that sexually explicit e-mails were not valid basis for sexual harassment claim because such e-mails were meant to be private, and therefore were not directed at plaintiff); *Cronin v. Martindale Andres & Co.*, 159 F. Supp. 2d 1, 6 (E.D. Pa. 2001) (finding that because offensive materials at issue were not aimed at plaintiff, and she instead discovered such materials due to her own efforts, such materials could not form basis of sexual harassment claim).

The Court has no doubt that Plaintiff worked in a difficult environment and experienced distress from her observations of  Thompson's conduct.  However, Title VII only protects against discriminatory treatment, and rather than being motivated by Plaintiff's gender, the record reflects that Thompson's conduct was motivated by poor judgment and vulgarity.  As such, Plaintiff's Title VII hostile work environment claim cannot survive summary judgment.  *See Penry*, 155 F.3d at

13

1263.[10] [11]

## B.    Wrongful Discharge

In support of its Motion for Summary Judgment as to Plaintiff's wrongful discharge claim,

---

[10]   The Court conducted an exhaustive search of Title VII case law and was unable to find any case with similar facts to those at issue – *i.e.*, where a plaintiff brought a sexual harassment claim after the alleged harasser exposed himself in a public location, although did so in a secretive manner, so that *any* person in such location, whether male or female, could have viewed such exposure. The exposure cases found by the Court were inapposite to this matter in that the alleged harasser purposefully exposed himself *to the plaintiff* and there was no question as to whether the harasser intended the plaintiff to view such conduct. *See, e.g. Williams v. Mo. Dep't of Mental Health*, 407 F.3d 972, 974 n.3 (8th Cir. 2005) (alleged harasser "approached [plaintiff] and pulled down his pants to expose his genitals [and] then said, "Man, look how hard it is").

[11]   Plaintiff's retaliation claim is not affected by the Court's dismissal of her hostile work environment claim. First, a finding that Plaintiff's hostile work environment claim cannot survive summary judgment does not affect the viability of Plaintiff's retaliation claim. *See Crumpacker v Kan. Dept. of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003) (stating that a plaintiff may maintain an action for retaliation based on participation in a protected proceeding regardless of whether the conduct forming the basis of her underlying complaint is adjudged to violate Title VII so long as the plaintiff had a reasonable good faith belief that the underlying conduct was a violation of the statute).       Second, the State has not provided any argument as to why Plaintiff's retaliation claim should be dismissed on summary judgment. Although the State asserts that "Plaintiff's Title VII *claims* must fail" when arguing that Plaintiff cannot demonstrate that Thompson harassed her "because of her sex" (*see* State's Mot. for Summ. J. 16) (emphasis added), therefore implying that such argument relates to both her retaliation and hostile work environment claims, the "because of sex" element relates to the hostile work environment claim and such a showing is not necessary to make a prima facie case of retaliation. *See Dick v. Phone Directories Co., Inc*. 397 F.3d 1256, 1267 (10th Cir. 2005) (stating that "in order to establish a prima facie case of retaliation, [plaintiff] must show (1) she engaged in protected opposition to discrimination; (2) [plaintiff's employer] took an adverse employment action against her; and (3) a causal connection between the protected activity and the adverse action"). Further, the State has provided absolutely no argument detailing why Plaintiff cannot, as a matter of law, demonstrate any of the elements of her retaliation claim. Accordingly, Plaintiff's retaliation claim survives summary judgment.

    Because the State did not address the elements of Plaintiff's retaliation claim, neither party addressed whether testifying before the Council constitutes "protected activity." The Court desires briefing on this in advance of trial, and directs the parties to include discussion of this issue in their trial briefs.

the State offers a mere five sentences of argument.  These sentences provide generalized and conclusory assertions that are insufficient to demonstrate the appropriateness of summary judgment. Further, the State fails to include any legal citation or analysis in advocating for summary judgment as to the wrongful discharge claim.  The Court is unwilling to grant summary judgment to the State on such a basis.  The State's Motion for Summary Judgment is accordingly DENIED as to this claim.

However, given that Plaintiff has characterized this claim as a "*Burk* tort," (*see* Pl.'s Resp. to State's Mot. for Summ. J. 10), Plaintiff should be prepared to identify at the pre-trial conference "an Oklahoma public policy goal that is clear and compelling and is articulated in existing Oklahoma constitutional, statutory or jurisprudential law."  *Clinton v. State ex. rel. Logan County Election Bd.*, 29 P.3d 543, 546 (Okla. 2001); *see Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989) (holding that an employee who is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy may bring a tort claim for wrongful discharge).

### C.    Intentional Infliction of Emotional Distress

The State did not move for summary judgment as to Plaintiff's claim for intentional infliction of emotional distress in its Motion for Summary Judgment.  However, after Plaintiff pointed out this omission in her response brief, the State included argument as to this claim in its reply brief. Specifically, the State argues that Plaintiff's intentional infliction of emotional distress claim must fail because the State is immune pursuant to the Governmental Tort Claims Act ("GTCA").  Despite the State's failure to appropriately move for summary judgment as to Plaintiff's intentional infliction of emotional distress claim, the Court will address the State's argument given the existence of Oklahoma case law that is directly on point.

Pursuant to the GTCA, the State is only liable "for loss resulting from . . . the torts of its employees acting within the scope of their employment . . . ." and "shall not be liable . . . for any act or omission of an employee acting outside the scope of his employment." Okla. Stat. tit. 51, § 153. A governmental employee, such as Defendant Thompson, only acts within the scope of his employment when he acts in good faith. *See McMullen v. City of Del City*, 920 P.2d 528, 530 (Okla. Civ. App. 1996). Therefore, in order to hold the State liable for Thompson's actions, Plaintiff must show that Thompson acted in good faith at all relevant times.

However, in order to prove her claim of intentional infliction of emotional distress, Plaintiff must demonstrate that Thompson's behavior was "outrageous," *see Breeden v. League Services Corporation*, 575 P.2d 1374, 1376-77 (Okla. 1978)), and it is well-established that Plaintiff cannot meet this element if Thompson was acting in good faith. *See McMullen*, 920 P.2d at 531 ("There is no way to prove a claim for [intentional infliction of emotional distress] if the defendant has acted in good faith.") (citing *Hawkins v. Greene*, 311 S.C. 88, 427 S.E.2d 692, 693 (Ct. App. 1993) for proposition that defendant's conduct cannot be characterized as "outrageous" if he is acting in good faith). Accordingly, because the State is only liable for Thompson's actions if he acted in good faith, and because Plaintiff is unable to meet the elements of her claim for intentional infliction of emotional distress if Thompson acted in good faith, Plaintiff's intentional infliction of emotional distress claim against the State fails, and summary judgment is GRANTED as to this claim.

## IV.   Defendant Thompson's Amended Motion for Partial Summary Judgment

Defendant Thompson moves for summary judgment as to Plaintiff's First Claim of Relief (Violation of Constitutional Rights), wherein Plaintiff alleges that Defendant, acting under color of State law, deprived her of certain constitutional rights in violation of 42 U.S.C. § 1983. Defendant also seeks a determination from this Court limiting the time period for which Plaintiff may pursue

16

her claim for money damages.

### A.      Plaintiff's § 1983 Claim

Section 1983 allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  In her response brief, Plaintiff clarifies the basis of her section 1983 claim.  Specifically, Plaintiff states that Defendant "violated her constitutional right to equal protection by creating a sexually hostile work environment and . . . deprived her of her First Amendment right of free speech by firing her in retaliation for giving testimony before the Council." (Pl.'s Resp. to Def. Thompson's Am. Mot. for Partial Summ. J. 6.)[12]

### 1.      Equal Protection Violation

An allegation of sexual harassment is actionable under section 1983 as a violation of the Equal Protection Clause of the Fourteenth Amendment.[13] *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994) (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989)).  The Tenth Circuit has noted that what constitutes a hostile work environment in the context of section 1983 is not clearly established in this circuit.  *See Mitchell v. City & County of Denver*, 112 Fed. Appx. 662, 671 n.11

---

[12]   In her first cause of action, Plaintiff 's Complaint alleges that Defendant Thompson "deprived [her] of her constitutional rights, including her rights of Equal Protection, Free Speech and Freedom of Association."  (Pl.'s Compl. ¶ 12.) Neither party provides argument as to Plaintiff's "Freedom of Association" allegation and, accordingly, the Court does not treat such allegation herein.

[13]  The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

17

(10th Cir. 2004).[14]  However, the Tenth Circuit has stated that in order to recover under a section 1983 equal protection claim for sexual harassment, Plaintiff "must establish that . . . [Defendant] discriminated against her *because of her sex*."  *Noland*, 39 F.3d at 272 (citing *Starrett*, 876 F.2d at 815) (emphasis added); *see MacArthur v. San Juan County*, 416 F. Supp. 2d 1098, 1166-67 (D. Utah 2005) (stating that "[i]n order to state a viable equal protection claim under § 1983, 'a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class'") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) and *Washington v. Davis*, 426 U.S. 229, 240 (1976)).[15]  For the reasons described in Section III.A.3 *supra*, the Court finds Plaintiff is unable to demonstrate that Defendant Thompson's allegedly harassing behavior was due to her gender.  Therefore, Plaintiff is unable to sustain her claim that Defendant Thompson violated her constitutional right to equal protection by creating a sexually hostile work environment.  Defendant Thompson's Amended Motion for Partial Summary Judgment is therefore GRANTED as to this claim.

---

[14]  The Tenth Circuit has clearly held, however, that the elements of a disparate treatment claim are the same whether the case is brought under section 1983 or Title VII.  *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227 (10th Cir. 2007).

[15]  Caselaw from other circuits indicates that those circuits that have considered the issue have concluded that "[s]exual harassment claims under section 1983 are analyzed under the same standards developed in Title VII litigation and the elements of a prima facie case are the same regardless of which statute the plaintiff uses to seek relief."  *Wright v. Rolette County*, 417 F.3d 879, 884 (8th Cir. 2005); *see Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (stating "the analysis for [a section 1983 claim for violation of the equal protection clause due to sex based discrimination] is similar to that used for employment discrimination claims brought under Title VII, the difference being that a section 1983 claim, unlike a Title VII claim, can be brought against individuals); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (stating "[c]ourts may apply the standards developed in Title VII litigation to similar litigation under § 1983").  Although it is likely that the Tenth Circuit would follow suit, this Court need not decide the issue since it is clear that Plaintiff, at the very least, must show that the alleged harassment was sex-based.  *See Noland*, 39 F.3d at 272.

### 2.      Freedom of Speech Violation

With regard to Plaintiff's argument that Defendant Thompson deprived her of her First Amendment right to free speech by firing her in retaliation for giving testimony before the Council, Thompson argues that "a theory of liability for retaliatory conduct [does not] come within [section] 1983." (Def. Thompson's Am. Mot. for Partial Summ. J. 10.)  Although the cases cited by Defendant in support of this argument do indeed stand for the proposition that the rights created by Title VII, including the right to be free from retaliatory conduct, may not be asserted as the basis for a section 1983 claim,[16] this principle does not assist Defendant Thompson.   Specifically, this aspect of Plaintiff's section 1983 claim is not predicated upon a violation of Title VII, but rather upon a violation of the First Amendment, and such claim is actionable under section 1983 even if there exists a factual overlap with Plaintiff's Title VII allegations. *See Starrett*, 876 F.2d at 813-14 (stating if "a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application") (permitting plaintiff's section 1983 claim despite factual overlap with Title VII allegations because section 1983 claim was premised on the First Amendment); *see also Peterson v. Utah Dep't of Corrs.*, 301 F.3d 1182 (10th Cir. 2002) (plaintiff brought Title VII retaliation claim against Utah Department of Corrections and section 1983 First Amendment claim against individual defendants for same allegedly retaliatory conduct); *Paradis v. Montrose Mem'l Hosp.*, 157 F.3d 815 (10th Cir. 1998) (plaintiffs alleged that defendant retaliated against them in violation of their First Amendment

---

[16]  *See Maldonado v. City of Altus*, 433 F.3d 1294, 1308 (10th Cir. 2006); *Long v. Laramie County Cmty. Coll. Dist.*, 840 F.2d 743, 752 (10th Cir. 1988) (stating that a theory of liability under federal law for retaliatory conduct does not come within section 1983); *Meade v. Merchants Fast Motor Line, Inc.*, 820 F.2d 1124, 1125 n.1 (10th Cir. 1987) (stating that rights created by Title VII may not be asserted as the basis for a cause of action under section 1983); *Tafoya v. Adams*, 816 F.2d 555, 557-58 (10th Cir. 1987).

rights after they reported, *inter alia*, sexually harassing behavior by supervisor and brought claim

pursuant to section 1983); *Nieto v. Kapoor*, 182 F. Supp. 2d 1114 (D.N.M. 2000) (plaintiff brought

section 1983 claim based on retaliation for protected speech in violation of the First Amendment).

 In determining whether a public employer impermissibly retaliated against a public employee

in violation of the employee's First Amendment rights, the Tenth Circuit has instructed courts to

utilize a five-part test based on the Supreme Court cases of *Pickering v. Board of Education*, 391 U.S.

563 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006) ("*Garcetti/Pickering* analysis"). *See*

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007). The

*Garcetti/Pickering* analysis requires the following steps:

> First, the court must determine whether the employee speaks pursuant to [his] official
> duties.  If the employee speaks pursuant to his official duties, then there is no
> constitutional protection because the restriction on speech simply reflects the exercise
> of employer control over what the employer itself has commissioned or created.[17]
> Second, if an employee does not speak pursuant to his official duties, but instead
> speaks as a citizen, the court must determine whether the subject of the speech is a
> matter of public concern.  If the speech is not a matter of public concern, then the
> speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen
> on a matter of public concern, the court must determine whether the employee's
> interest in commenting on the issue outweighs the interest of the state as employer.
> Fourth, assuming the employee's interest outweighs that of the employer, the
> employee must show that his speech was a substantial factor or a motivating factor
> in [a] detrimental employment decision.  Finally, if the employee establishes that his
> speech was such a factor, the employer may demonstrate that it would have taken the
> same action against the employee even in the absence of the protected speech.

*Id.* (internal citations and quotations omitted) (footnote added).  "The first three steps are to be

resolved by the district court, while the last two are ordinarily for the trier of fact."  *Id.*; *see also*

*Weaver v. Chavez*, 458 F.3d 1096, 1100 (10th Cir. 2006) ("The first two inquiries are questions of

law for the court to decide because they concern whether the expression at issue is subject to the

---

[17]  The first step was added by the Tenth Circuit in 2007 based on the Supreme Court's
decision in *Garcetti*.  *See Brammer-Hoelter,* 492 F.3d at 1202.

protection of the First Amendment.  The third and fourth steps are questions to be resolved by the jury because they concern causation.") (quotation and citation omitted).[18]

Defendant Thompson's Amended Motion for Partial Summary Judgment does not include mention of this analysis or any application of said framework.  Rather, in support of his argument that summary judgment is proper as to Plaintiff's section 1983 First Amendment claim, Defendant Thompson cites to the general burden-shifting analysis of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), which is applied in the Title VII context.  In her response brief regarding this claim, Plaintiff cites to *Connick v. Myers*, 461 U.S. 138 (1983), which is cited in *Garcetti* and *Brammer-Hoelter* and partially forms the basis for the five-part analysis outlined above.  However, although Plaintiff identified the relevant framework for First Amendment retaliation claims, Plaintiff did not provide any argument as to the five-step test currently applied by the Tenth Circuit.

Accordingly, given that Thompson has not even addressed the proper legal framework, he certainly has not demonstrated that he is entitled to summary judgment on this claim at this time.  Nonetheless, the Court desires arguments from the parties on this issue in advance of trial.  The parties shall thus include discussion, applying of each of the five steps of the *Garcetti/Pickering* analysis to Plaintiff's section 1983 First Amendment claim, in their trial briefs.

**B.      Limitation of Plaintiff's Damages**

In his Amended Motion for Partial Summary Judgment, Defendant Thompson argues that the Court should find, as a matter of law, "that the period during which Plaintiff may pursue her alleged damages is limited to the period from January 5, 2004 through September 1, 2004."  (Def. Thompson's Am. Mot. for Partial Summ. J. 23-24.)  In discovery responses issued to Defendant

---

[18] *Weaver* was decided prior to addition of the first step and therefore refers to a four-step test.

Thompson, Plaintiff stated that she seeks "monetary damages in the form of back pay [and] front pay." (*Id.* Ex. A at 6.)  Plaintiff also stated as follows:

> During calendar year 2003, Plaintiff earned an additional $25,121.00 from her preparation of transcripts for appeals.  After Plaintiff was terminated in 2004, Plaintiff was only able to earn additional income of $4,174,00.  During calendar year 2005, Plaintiff was only able to earn an additional $11,535.00.  Plaintiff believes she is entitled to be compensated for the loss of the additional income she was able to earn while employed by the Chief Judge in the Creek County District Court.

(*Id.*)  Because Plaintiff alleges in her Complaint that Defendant Thompson resigned on September 1, 2004, Defendant Thompson argues that she cannot demonstrate that she "would have retained her position as 'the Court Reporter for the Chief Judge in Creek County' after the date of [Defendant] Thompson's resignation." (Def. Thompson's Am. Mot. for Partial Summ. J. 24.)  Accordingly, it is Defendant Thompson's position that Plaintiff's claim for "additional income" should be limited from January 5, 2004 (the date cited by Defendant Thompson as the date of Plaintiff's alleged discharge) until September 1, 2004 (the date Defendant Thompson resigned).

In response, Plaintiff maintains Defendant Thompson's argument that she would not have retained her position as the "Court Reporter for the Chief Judge in Creek County" is "pure speculation" because Defendant Thompson "told [Plaintiff] at one time that he would make sure she had a job with his replacement when he retired." (Pl.'s Resp. to Def. Thompson's Am. Mot. for Partial Summ J. 12.)  Moreover, Plaintiff argues there is evidence demonstrating that had she not been terminated, the number of transcripts Plaintiff prepared for appeals would not have changed after Defendant Thompson's resignation from the bench. (*Id.*)

The Court finds Defendant Thompson has not met his burden of showing that no genuine issue of material fact exists as to whether Plaintiff would have been able to maintain her additional income had she not be discharged by Thompson. *See Zamora*, 449 F.3d at 1112 (citation omitted).

22

The Court therefore declines to limit the period of Plaintiff's damages at this time.

## V.      Conclusion

For the reasons stated herein, the State's Motion for Summary Judgment (Doc. 36),  and Supplemental Motion for Summary Judgment (Doc. 89) are GRANTED IN PART and DENIED IN PART.  Specifically, summary judgment is GRANTED as to Plaintiff's claims for Title VII hostile work environment and intentional infliction of emotional distress against the State.  Summary judgment is DENIED, however, as to Plaintiff's claims of wrongful discharge and Title VII retaliation against the State.

Further, Defendant Thompson's Amended Motion for Partial Summary Judgment (Doc. 50), is GRANTED IN PART and DENIED IN PART.  Summary Judgment is GRANTED as to Plaintiff's equal protection section 1983 claim, but is DENIED as to Defendant Thompson's argument that the time period of Plaintiff's damages should be limited as matter of law.  Finally, the Court declines to rule on Defendant Thompson's motion for summary judgment as to Plaintiff's section 1983 First Amendment claim at this time.  The parties are ordered to include discussion, applying each of the five steps of the *Garcetti/Pickering* analysis to Plaintiff's section 1983 First Amendment claim, in their trial briefs.

**ORDERED THIS 4th DAY OF March, 2008.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**