**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LISA FOSTER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No. 05-CV-305-TCK-FHM** |
| | ) | |
| DONALD THOMPSON, CREEK | ) | |
| COUNTY, AND THE STATE OF | ) | |
| OKLAHOMA, | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff's Motion to Voluntarily Dismiss Tort Claims Against Defendant Thompson (Doc. 142), the State of Oklahoma's ("State") Supplemental Motion for Summary Judgment (Doc. 137), and Defendant Donald Thompson's ("Thompson") Supplemental Motion for Summary Judgment (Doc. 136).

**I.     Procedural History**

Plaintiff asserted claims against the State for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, wrongful discharge, and intentional infliction of emotional distress.  Plaintiff also asserted claims against Defendant Thompson for violation of 42 U.S.C. § 1983, tortious interference with employment, and intentional infliction of emotional distress.[1]

In its Opinion and Order of March 4, 2008, the Court ruled on the initial motions for summary judgment filed by Defendants.  In the first round of summary judgment briefing, the State moved for summary judgment as to all claims, and the Court granted summary judgment as to the

---

[1]  The Court has already set forth the facts giving rise to these claims in its initial summary judgment order and incorporates those facts herein.  (*See* 3/4/08 Order.)

Title VII hostile work environment and intentional infliction of emotional distress claims.  The Court denied summary judgment as to the Title VII retaliation claim and the wrongful discharge claim because the State provided virtually no argument as to these claims.  With regard to Defendant Thompson, he initially moved for partial summary judgment as to Plaintiff's § 1983 claims.  The Court granted summary judgment as to Plaintiff's § 1983 claim that was based on a violation of the Equal Protection Clause.  The Court declined to rule on Defendant Thompson's motion for summary judgment as to Plaintiff's § 1983 claim that was based on a violation of the First Amendment because both Defendant Thompson and Plaintiff failed to identify or apply the *Garcetti/Pickering* analysis.  Therefore, the Court ordered the parties to include discussion of the *Garcetti/Pickering* analysis in their trial briefs.

A pre-trial conference was held on September 15, 2008, at which the parties presented new arguments as to the claims remaining for trial.  In order to best determine the merit of such arguments, the Court ordered supplemental briefing.  Specifically, the Court directed the State to address: (1) whether Plaintiff alleged a sufficient public policy to support her wrongful discharge claim; (2) whether the Governmental Tort Claims Act mandates dismissal of Plaintiff's wrongful discharge claim; and (3) whether Plaintiff engaged in protected activity under Title VII.  The Court directed Defendant Thompson to further brief: (1) whether summary judgment is appropriate as to Plaintiff's tortious interference with employment and intentional infliction of emotional distress claims; and (2) whether Plaintiff's testimony before the Council of Judicial Complaints was a matter of public concern pursuant to the *Garcetti/Pickering* analysis.  The Court also gave permission to Defendants to "address any other matters they believe necessary in these supplemental briefs." (9/19/08 Order 1.)

2

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III.    Plaintiff's Motion to Voluntarily Dismiss Tort Claims Against Defendant Thompson

Plaintiff moves the Court to dismiss her claims against Defendant Thompson for intentional infliction of emotional distress and tortious interference with employment. Federal Rule of Civil Procedure 41(a)(2) "permits a court to dismiss an action without prejudice upon such terms and conditions as the court deems proper." *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) (internal citations omitted). "The rule is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Id.* The decision whether to permit a voluntary dismissal falls within the court's discretion and absent "legal prejudice" to the defendant, the district court normally should grant such a dismissal. *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997). "The parameters of what constitutes 'legal prejudice' are not entirely clear, but relevant factors the district court should consider include: the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part

3

of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation." *Id.* (citing *Phillips U.S.A., Inc. v. Allflex U.S.A., Inc.*, 77 F.3d 354, 358 (10th Cir. 1996)). The court is also required to consider the "equities of the plaintiff." *Ohlander*, 114 F.3d at 1537.

Applying these factors to the instant case, the Court finds that voluntary dismissal of the tort claims against Defendant Thompson is not appropriate. Plaintiff moved to dismiss these claims after a pre-trial conference was held and a mere two and a half weeks before trial was scheduled.[2]  The Court finds Plaintiff's delay to be inexcusable, especially given that this litigation was instigated in 2005. Plaintiff had more than three years to prepare her case for trial, and this last-minute filing exhibits a lack of diligence. Further counseling against dismissal of these claims is the complete lack of explanation in Plaintiff's motion. Plaintiff makes no statements or arguments in support of her desire to voluntarily dismiss her tort claims against Defendant Thompson. Finally, although the Court notes that Defendant Thompson does not object to Plaintiff's motion, the State has based its trial preparation, in part, on the existence of these claims and has undoubtedly expended time and resources in this regard.[3]  The Court therefore finds that dismissal without prejudice of these claims is not warranted, and will instead subject them to summary judgment scrutiny (*see infra* sections VI. B. & C.). Plaintiff's Motion to Voluntarily Dismiss Tort Claims Against Defendant Thompson (Doc. 142) is DENIED.

---

[2]  Plaintiff moved to voluntarily dismiss these claims on October 3, 2008. At that time, trial was scheduled for October 20, 2008. (*See* 9/18/08 Minutes.) The trial was later re-scheduled for October 27, 2008. (*See* 10/10/08 Order.)

[3]  As discussed in section IV.A.1, the State maintains that Plaintiff's tort claims against Defendant Thompson support dismissal of Plaintiff's wrongful discharge claim against the State because these tort claims demonstrate that Defendant Thompson was acting in bad faith when he terminated Plaintiff.

**IV.    State of Oklahoma's Supplemental Motion for Summary Judgment**

The State moves for summary judgment as to Plaintiff's wrongful discharge and Title VII retaliation claims.

**A.    Wrongful Discharge Claim**

The State maintains that summary judgment is proper as to Plaintiff's wrongful discharge claim, brought pursuant to *Burk v. K-Mart Corporation*, 770 P.2d 24 (Okla. 1989). The State argues: (1) it is immune pursuant to the Governmental Tort Claims Act ("GTCA"); and (2) Plaintiff cannot establish the elements of her claim because she had an adequate statutory remedy.

**1.    Governmental Tort Claims Act**

Pursuant to the GTCA, the State is only liable "for loss resulting from . . . the torts of its employees acting within the scope of their employment . . . ." and "shall not be liable . . . for any act or omission of an employee acting outside the scope of his employment." Okla Stat. tit. 51, § 153. "Scope of employment" is defined as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority." *Id.* § 152(9). An employee's acts are not within the scope of employment if the employee acted with malice or in bad faith. *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003).

In some instances, the question of whether the State can be held liable for the acts of an employee is straight-forward because the elements of the claim require proof of bad faith or malice. *See Fehring v. State Insur. Fund*, 19 P.3d 276, 283 (Okla. 2001) ("[W]hen, for viability, the tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of governmental employees, there can be no liability against the governmental entity in a GTCA-based suit."). In these situations, a plaintiff "could not possibly hold a governmental entity

liable . . . because the only way to prevail on such a claim would be to present evidence which necessarily took the bad actors outside the scope of their employment." *McMullen v. City of Del City*, 920 P.2d 528, 530-31 (Okla. Civ. App. 1996) (ruling on whether city could be held liable for claim of intentional infliction of emotional distress based on actions of city employee) (finding that claim should be dismissed pursuant to GTCA because "extreme and outrageous" conduct is an element of the claim and plaintiff was unable to meet this element if city employee acted in good faith);[4] *see Parker v. City of Midwest City*, 850 P.2d 1065, 1067 (Okla. 1993) (finding plaintiff's malicious prosecution claim against city could not stand because "one element [plaintiff] must prove in malicious prosecution is malice," and it was therefore legally impossible for plaintiff to meet elements of claim and show that city employee acted in good faith).

The claim of wrongful discharge does not fall into this category, however, because the elements of wrongful discharge do not require a showing of bad faith or malice. *See Vasek v. Bd. of County Comm'rs of Noble County,* 186 P.3d 928, 932 (Okla. 2008) (outlining the elements of a claim for wrongful discharge of an at-will employee). Unlike the claims of intentional infliction of emotional distress and malicious prosecution, Plaintiff is able to meet the elements of a wrongful discharge claim without having to prove that Defendant Thompson acted with malice. Additional analysis is therefore required to determine whether Defendant Thompson acted within the scope of his employment when he discharged Plaintiff.

An example of such analysis can be seen in *Wilson v. City of Tulsa*, 91 P.3d 673 (Okla. Civ. App. 2004), where the court had to decide whether a wrongful discharge claim could be brought against a city employee pursuant to the GTCA. Central to this inquiry was whether the employee

---

[4] It was on this basis that the Court granted summary judgment as to Plaintiff's intentional infliction of emotional distress claim against the State.

was acting within the scope of his employment – *i.e.,* acting in good faith – when he discharged the

plaintiff.  *See id.* at 678 ("If [the city employee] was operating within the scope of his employment,

he cannot be held personally liable and should not have been named in this lawsuit."); *see* Okla. Stat.

tit. 51, § 163 (stating that a state or political subdivision employee acting within the scope of his or

her employment may not be named as a defendant).  In making this determination, the court

analyzed the facts of the case, concluding that there was no evidence "that [the city employee's]

decision [to terminate plaintiff] was made with any degree of malicious intent toward [plaintiff]."

*Wilson*, 91 P.3d at 679.

The State argues that there is sufficient evidence to find that Defendant Thompson acted with

malice when he terminated Plaintiff because Plaintiff has alleged certain tort claims against

Defendant Thompson – namely, intentional infliction of emotional distress and tortious interference

with employment – which contain an element of malice.  The State is correct when it states, "if Ms.

Foster is successful in proving her claim of Intentional Infliction of Emotional Distress against

Thompson in relation to her termination, . . . she cannot *prevail* on her claim against the State for

wrongful termination,"[5] (*see* State's Supp. Mot. for Summ. J. 12) (emphasis added), as a party

cannot *recover* separately on inconsistent theories when one theory precludes the other.  *See*

*Brookhaven Landscape & Grading Co. v. J.F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir.

1982).  Although Plaintiff cannot, at the end of the day, recover on inconsistent claims, Plaintiff may

plead inconsistent claims, and such claims can be submitted to the jury to be sorted out.  *See* Fed.

R. Civ. P. 8(d) (stating a party "may state as many separate claims or defenses as it has, regardless

of consistency"); *Whitt v. E.I. DuPont de Nemours & Co.*, 461 F.2d 1152, 1154 (6th Cir. 1972)

---

[5] This statement assumes that the intentional infliction of emotional distress claim against
Thompson is indeed related to the termination and not solely the instances of exposure.

7

(stating that inconsistent theories of recovery may be submitted to the jury); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1283 (3d ed. 2004) ("[A] pleader [m]ay set forth inconsistent legal theories in his or her pleading and will not be forced to select a single theory on which to seek recovery against the defendant.").  Accordingly, although Plaintiff has asserted inconsistent claims in that she cannot simultaneously recover on her tort claims against Defendant Thompson and on her wrongful discharge claim against the State, this does not require the Court to find, as a matter of law, that Defendant Thompson acted with malice when he terminated Plaintiff. Rather, the Court finds that there is a genuine issue of material fact as to this issue and will submit this question to the jury.

### 2.  Adequate Statutory Remedy

The elements of a claim for wrongful discharge of an at-will employee claim are as follows: (1) an actual or constructive discharge; (2) of an at-will employee; (3) in significant part for a reason that violates an Oklahoma public policy goal; (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma; and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal. *See Vasek,* 186 P.3d at 932.  The State argues that Plaintiff cannot recover on her wrongful discharge claim because of the existence of an adequate statutory remedy – namely, the Oklahoma Personnel Act ("Act"), Okla. Stat. tit. 74, § 840-1.1 et seq.

As an initial matter, Plaintiff contests that it is necessary to prove the absence of an adequate statutory remedy in order to succeed on her claim, citing *Green v. Board of County Commissioners*, 472 F.3d 794 (10th Cir. 2007).  In *Green*, the Tenth Circuit held that the "adequate statutory remedy" preclusion did not apply to conduct-based, rather than status-based, terminations.  *Id.* at 804.  In coming to this conclusion, the Tenth Circuit discussed various Oklahoma Supreme Court

8

cases, including *List v. Anchor Paint Manufacturing Company*, 910 P.2d 1011 (Okla. 1996) and *Marshall v. OK Rental & Leasing, Incorporated*, 939 P.2d 1116 (Okla. 1997). In both *List* and *Marshall*, the Oklahoma Supreme Court denied a wrongful discharge claim on the basis of an adequate statutory remedy, but "rested on the fact that plaintiffs brought status-based claims rather than conduct-based claims." *Green*, 472 F.3d at 803 (citing *Marshall*, 939 P.2d at 1119-1120 (stating that plaintiff "has not stated a wrongful discharge claim under *Burk* because she brings this claim based upon her status rather than her conduct") ("We find this matter is governed by *List* . . ., where we found that Oklahoma does not recognize a common law claim for wrongful constructive discharge in violation of public policy where the claim is predicated upon the employee's status rather than conduct"); *List*, 910 P.2d at 1015 ("Mr. List has adequate statutory remedies, and his claim is not based on retaliation for anything that he did. Instead, Mr. List's claim is based solely upon his status, his age. Because Mr. List's statutory remedies are adequate and his common law claim is based solely on his status, his statutory remedies are exclusive.")). Based on *List* and *Marshall*, the Tenth Circuit stated "it appears that the Oklahoma Supreme Court would allow [plaintiff] to pursue a *Burk* claim [despite the existence of an adequate statutory remedy], as her wrongful discharge allegations are predicated upon her conduct rather than her status." *Green*, 472 F.3d at 804.

Subsequent to *Green*, however, the Oklahoma Supreme Court decided *Vasek v. Board of County Commissioners of Noble County*, 186 P.3d 928 (Okla. 2008). Plaintiff contends that *Vasek* "does nothing to clear up the ambiguity that existed in Oklahoma's law at the time *Green* was decided . . . [and] [s]ince no substantive change in the law has occurred since *Green* was decided, this Court should reject the State's 'adequate statutory remedy' defense to Foster's conduct-based *Burk* claim." (Pl.'s Resp. to State's Supp. Mot. for Summ. J. 3.) While Plaintiff is correct that the

*Vasek* court does not explicitly address *Green* or its previous distinction between conduct-based and status-based claims, the Court finds that *Vasek* implicitly calls *Green*'s holding into question. Specifically, in *Vasek*, the Oklahoma Supreme Court entertained analysis as to whether the statutory remedy at issue – 42 U.S.C. § 1983 – was "adequate" to protect the relevant public policy goal despite the fact that the claim was conduct, rather than status, based.  If *Green*'s holding that the "adequate statutory remedy" preclusion does not apply to conduct-based terminations is true, the Oklahoma Supreme Court would not have engaged in *any* analysis as to whether a statutory scheme was adequate.  Rather, the court would have dismissed the argument from the outset given the conduct-based nature of the termination.  The fact that the Oklahoma Supreme Court engaged in an analysis of the adequacy of the statutory remedy suggests that, despite *Green*'s conclusion to the contrary, the "adequate statutory remedy" preclusion does indeed apply to conduct-based terminations.  Therefore, the Court will proceed to analyze whether the State has shown the presence of an adequate statutory remedy.

The State cites to two sections of the Act in order to prove that Plaintiff had an adequate statutory remedy – sections 840-2.5 and  840-6.6.  Section 840-2.5(E) states as follows:

> Any employee or former employee aggrieved pursuant to this section may file an appeal with the Oklahoma Merit Protection Commission within sixty (60) days of the alleged disciplinary action. The Oklahoma Merit Protection Commission [("Commission")] shall promulgate rules to establish procedures for the conduct of investigations.  If, after investigation, the Executive Director determines a violation of this section may have occurred, the Executive Director shall appoint a hearing examiner to hear the case as provided for in Section 840-6.6 of this title.

Section 840-6.6 outlines the procedure for holding a hearing if the Executive Director finds, after investigation, that a violation of the Act may have occurred.  If, after a hearing, it is determined that a violation has occurred, "the Commission or presiding official shall[] [d]irect the appointing

authority to take the necessary corrective action[] or [r]eport the finding to the appropriate authorities for further action." *Id.* § 840-6.6(B)(1)-(2).

In assessing whether there exists an adequate statutory remedy, the Oklahoma Supreme Court has explained that "[t]he question is not, and never has been, merely whether a discharged at-will employee could possibly pursue a statutory remedy." *Vasek*, 186 P.2d at 934. Rather, "the question is whether 'a statutory remedy exists that is sufficient to protect the Oklahoma public policy goal,'" *id.,* which, in this case, is to provide protection to employees who give testimony in a proceeding. (*See* Pl.'s Trial Br. 9; Pl.'s Resp. to State's Supp. Mot. for Summ. J. 4.) In the instant case, Plaintiff argues that the remedies of the Act are insufficient to protect the Oklahoma public policy goal at issue, and the Court agrees.

Under the Act, an employee "may" file an appeal if she is aggrieved, but she will only be entitled to a hearing if the Executive Director, after conducting an investigation, determines that a violation of the Act may have occurred. If a hearing is granted and a violation is found, the Act merely states that the hearing officer can order "corrective action." The Act does not fully explain what form the corrective action may take, except to state that the "corrective action" shall include suspension without pay, demotion, or discharge. Okla. Stat. tit. 74, § 2.5(F). The Court agrees with Plaintiff's assertion that this suggests that "corrective action" is aimed at disciplining the individual who violated the Act rather than making the aggrieved employee whole. Although the State maintains that correction action "presumably could include reinstatement, with backpay and benefits," the State offers no citation in support of this conclusion and demonstrates the uncertainty in this statement with the term "presumably." (*See* State's Supp. Mot. for Summ. J. 14.) In sum, the Court finds that the administrative procedure offered by the Act, wherein a hearing is not guaranteed and there are no explicit remedies aimed at making an aggrieved employee whole, are

inadequate to protect the public policy goal of providing protection to employees who give testimony in a proceeding.  The Court therefore denies the State's Supplemental Motion for Summary Judgment as to Plaintiff's wrongful discharge claim.

### B.      Title VII Retaliation Claim

The elements of a prima facie case of retaliation under Title VII are: (1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's action.  *Love v. Re/Max of America, Inc.*, 738 F.2d 383, 385 (10th Cir. 1984).  The State argues that Plaintiff's Title VII retaliation claim must fail because she did not engage in protected opposition to Title VII discrimination.[6]

In order to engage in protected activity, the plaintiff must do something to protest or complain about discriminatory conduct; as long as the plaintiff has a good faith belief that Title VII has been violated,  it is immaterial whether she prevails on her complaint of discrimination.  *See Love*, 738 F.2d at 385.  "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in an [unlawful practice]."  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) (finding that certain e-mails sent by the plaintiff did not constitute protected opposition when "[n]owhere in either e-mail [did] [plaintiff] mention or even allude to . . . discrimination") ("General complaints about company management and one's own negative performance evaluation will not suffice.").

---

[6]  The State also argues that Plaintiff and Defendant Thompson are not employees of the State for Title VII purposes.  Because the Court finds the issue of whether Plaintiff engaged in protected activity dispositive, it need not reach these additional arguments.

The Court has reviewed Plaintiff's testimony before the Council of Judicial Complaints ("Council") and finds that it does not constitute protected activity under Title VII. Typically, testimony that is protected under Title VII is provided in a "Title VII proceedings or investigation." *See Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53 (2006) (quoting 42 U.S.C. § 2000e-3(a) and stating Title VII's anti-retaliation provision "forbids an employer from discriminat[ing] against an employee . . . because that individual . . . testified, assisted, or participated in a Title VII proceeding or investigation.") (internal citations omitted). In this case, Plaintiff's testimony before the Council has no relationship to the Title VII claim that she eventually made. Instead, Plaintiff's testimony was compelled, and the purpose of the testimony was for the Council to assess whether Defendant Thompson violated the Oklahoma Constitution and Code of Judicial Conduct. (*See* Council's Findings of Fact, Conclusions of Law, Ex. 10 to State's Supp. Mot. for Summ. J.) Plaintiff's testimony was used solely for that goal, and not for Plaintiff to air any grievances or complaints regarding Defendant Thompson's conduct. In such a situation, where the purpose of underlying testimony has no relation to alleged discriminatory conduct, the testimony cannot be said to be protected by Title VII. *See Smith v. Potter*, No. 07-3031, 2007 WL 3104601, *3 (10th Cir. Oct. 24, 2007) (unpublished) (finding that plaintiff's testimony in a union-grievance hearing regarding whether two employees should be given light-duty assignments was not protected activity).

Further, at no point in her testimony before the Council did Plaintiff indicate her belief that she was being harassed or discriminated against by Defendant Thompson. In fact, Plaintiff testified that Defendant Thompson was not aware she could observe his conduct, suggesting that Plaintiff did not believe his conduct was directed at her. (*See* 9/12/03 Tr. at 12, Ex. 5 to State's Supp. Mot. for Summ. J. (answering "no" when asked "Does he have any idea that you can see him?"); 9/26/03 Tr. at 12, Ex. 1 to State's Supp. Mot. for Summ. J. ("[I] knew that he didn't know that I could see.").)

13

Rather than allege harassment and/or discrimination, Plaintiff's testimony is a narrative of what she, as an unknown observer, viewed in Defendant Thompson's courtroom.  Without a reference to or suggestion of harassment or discrimination, the Court cannot find that Plaintiff's testimony amounts to protected activity.  *See Steele v. Kroenke Sports Enters., L.L.C.*, No. 06-1377, 2008 WL 360614, *8 (10th Cir. Feb. 11, 2008) (affirming district court's decision that complaint did not constitute protected activity because "[plaintiff] did not mention sex or age discrimination") (unpublished); *see also Peterson v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (concluding that the absence of a reference to unlawful discrimination precludes a retaliation claim because an employer cannot engage in unlawful retaliation if it does not know the employee is engaging in protected opposition).  Defendant's Supplemental Motion for Summary Judgment as to Plaintiff's Title VII retaliation claim is therefore granted.[7]

## V.      Defendant Thompson's Supplemental Motion for Partial Summary Judgment

Defendant Thompson moves for summary judgment as to Plaintiff's § 1983 First Amendment and tortious interference with employment claims.  Defendant Thompson also argues that judgment should be granted in his favor as to Plaintiff's intentional infliction of emotional distress claim for any acts which occurred prior to June 2, 2003.

### A.      Plaintiff's § 1983 First Amendment Claim

Section 1983 allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any

---

[7]  The State also argues that Plaintiff's right to recover lost wages is limited because Plaintiff refused an offer of reinstatement by Defendant Thompson.  (*See* State's Supp. Mot. for Summ. J. 21-23.)  It appears from the State's briefing that this argument relates solely to Plaintiff's Title VII claim, as the basis for the State's position lies in the primary objective of Title VII.  (*See id.* at 22.)  The Court therefore finds this argument moot in light of its decision with regard to Plaintiff's Title VII retaliation claim.

citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws." 42 U.S.C. § 1983. Plaintiff contends Defendant Thompson "[d]eprived

her of her First Amendment right of free speech by firing her in retaliation for giving testimony

before the Council." (Pl.'s Resp. to Def. Thompson's Am. Mot. for Partial Summ. J. 6.)

    In determining whether a public employer impermissibly retaliated against a public employee

in violation of the employee's First Amendment rights, the Tenth Circuit has instructed courts to

utilize a five-part test based on the Supreme Court cases of *Pickering v. Board of Education*, 391 U.S.

563 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006) ("*Garcetti/Pickering* analysis"). *See*

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007). The

*Garcetti/Pickering* analysis requires the following steps:

> First, the court must determine whether the employee speaks pursuant to [his] official
> duties. If the employee speaks pursuant to his official duties, then there is no
> constitutional protection because the restriction on speech simply reflects the exercise
> of employer control over what the employer itself has commissioned or created.[8]
> Second, if an employee does not speak pursuant to his official duties, but instead
> speaks as a citizen, the court must determine whether the subject of the speech is a
> matter of public concern. If the speech is not a matter of public concern, then the
> speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen
> on a matter of public concern, the court must determine whether the employee's
> interest in commenting on the issue outweighs the interest of the state as employer.
> Fourth, assuming the employee's interest outweighs that of the employer, the
> employee must show that his speech was a substantial factor or a motivating factor
> in [a] detrimental employment decision. Finally, if the employee establishes that his
> speech was such a factor, the employer may demonstrate that it would have taken the
> same action against the employee even in the absence of the protected speech.

*Id.* (internal citations and quotations omitted) (footnote added). "The first three steps are to be

resolved by the district court, while the last two are ordinarily for the trier of fact." *Id.*; *see also*

*Weaver v. Chavez*, 458 F.3d 1096, 1100 (10th Cir. 2006) ("The first two inquiries are questions of

---

[8] The first step was added by the Tenth Circuit in 2007 based on the Supreme Court's
decision in *Garcetti*. *See Brammer-Hoelter,* 492 F.3d at 1202.

law for the court to decide because they concern whether the expression at issue is subject to the protection of the First Amendment.  The third and fourth steps are questions to be resolved by the jury because they concern causation.") (quotation and citation omitted).[9]

### 1.	Whether Plaintiff's Speech Involves a Matter of Public Concern

In his Supplemental Motion for Summary Judgment, Defendant Thompson argues that Plaintiff's § 1983 First Amendment claim must fail because the subject of her speech is not a matter of public concern.  In assessing whether the subject of speech relates to a matter of public concern, the Tenth Circuit has recently stated:

> Matters of public concern are those of interest to the community, whether for social, political, or other reasons.  In determining whether speech pertains to a matter of public concern, the court may consider the motive of the speaker and *whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest. Statements revealing official impropriety usually involve matters of public concern.*  Conversely, speech that simply airs grievances of a purely personal nature typically does not involve matters of public concern.  In deciding what is a matter of public concern, we are required to consider the content, form, and context of a given statement, as revealed by the whole record.

*Brammer-Hoelter*, 493 F.3d at 1205 (emphasis added).

At the outset, the Court finds that the content of Plaintiff's speech contained information which was of  "interest to the community, whether for social, political, or other reasons."  *Id.* Defendant Thompson was serving the people of Oklahoma as an elected official; as such, the community clearly had an interest in knowing about Defendant Thompson's actions while on the bench.  The conduct about which Plaintiff testified took place during public trials held in Defendant Thompson's courtroom and while Defendant Thompson was fulfilling the duties of his elected

---

[9] *Weaver* was decided prior to the addition of the first step and therefore refers to a four-step test.

position.  The subject of Plaintiff's testimony was of great interest, and likely concern, to the community.

Defendant Thompson argues that Plaintiff's testimony did not involve a matter of public concern because the testimony related to internal personnel disputes and working conditions.  The Court finds this characterization of Plaintiff's testimony to be inaccurate.  As previously noted in the context of Plaintiff's Title VII retaliation claim, the purpose of Plaintiff's testimony was for the Council to assess whether Defendant Thompson violated the Oklahoma Constitution and Code of Judicial Conduct, not for Plaintiff to air any grievances or complaints regarding Defendant Thompson's conduct.  At no point during her testimony did Plaintiff make any allegations that Defendant Thompson harassed her or discriminated against her, further supporting the conclusion that Plaintiff was not airing personal grievances in her speech.

Defendant Thompson makes much of the fact that Plaintiff's testimony was compelled by subpoena, and but for the subpoena, Plaintiff did not intend to make her observations of Defendant Thompson's conduct public.  However, the Court finds that these facts weigh in Plaintiff's favor, as they demonstrate that Plaintiff's motive behind her speech was not to air her personal grievances. Instead, Plaintiff's testimony was in direct response to a mandatory subpoena, and that subpoena was issued for the explicit purpose of ascertaining whether Defendant Thompson violated his constitutional and ethical duties while on the bench.  Plaintiff's testimony was accordingly *not* "calculated to redress personal grievances," but was instead motivated by Plaintiff's compliance with a subpoena.  *See Woodward v. City of Worland*, 977 F.2d 1392, 1403 (10th Cir. 1992) ("In deciding how to classify particular speech, courts focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it has a broader public purpose.").  This case is markedly different from those where the "thrust of [the plaintiff's] speech

17

was that [she] personally [was] being subjected to sexual harassment and . . . wanted it to stop." *Id.* (finding speech did not amount to matter of public concern when "[a] review of the entire record ma[de] it clear that the [p]laintiffs were intending to address personal grievances").

Further, it is undisputed that Plaintiff's testimony concerned the improper actions of a state judge while he was performing his official duties. The content of Plaintiff's speech "disclose[d] evidence of corruption, impropriety, or other malfeasance on the part of [a] public officia[l]," and thus "clearly concerns [a] matter of public import." *Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir. 1999); *see McFall v. Bednar* 407 F.3d 1081, 1089 (10th Cir. 2005) ("A government employee's speech that seeks to expose improper operations of the government or *questions the integrity of government officials* clearly concerns vital public interests.") (quotations omitted) (emphasis added); *Lee v. Nichol*, 197 F.3d 1291, 1295 (10th Cir. 1999) ("Speech that calls attention to a government's failure to discharge its governmental duties generally constitutes a matter of public concern."). If Plaintiff's testimony of Defendant Thompson's outrageous behavior on the bench – including the fact that Defendant Thompson used a penis pump, shaved his scrotum, and urinated in a trash can – does not amount to speech that "disclose[s] wrongdoing . . . or other malfeasance on the part of [a] governmental official in the conduct of [his] official duties," then it is difficult to imagine speech that would fall into this category.

Finally, in addition to the content of Plaintiff's speech, the form of Plaintiff's speech – *i.e.*, sworn testimony before an governmental adjudicatory body – lends additional support to a finding that Plaintiff's speech is protected. "When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern." *Catletti ex rel. estate of Catletti v. Rampe*, 334 F.3d 225, 230 (2d Cir. 2003) (citing *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989) (internal quotations omitted) and *Green v.*

*Philadelphia Hous. Auth.*, 105 F.3d 882, 887 (3d Cir. 1997) ("[T]he context of a courtroom appearance raises speech to a level of public concern, regardless of its content.")).  It is necessary to protect such sworn testimony as inherently involving matters of public concern because "[i]f employers were free to retaliate against employees who provide truthful, but damaging, testimony about their employers, they would force the employees to make a difficult choice.  Employees either could testify truthfully and lose their jobs or could lie to the tribunal and protect their job security." *Johnston*, 869 F.2d at 1578; *Reilly v. City of Atlantic City*, 532 F.3d 216, 229 (3d Cir. 2008) ("[I]t is the duty of every person to testify truthfully before a duly constituted tribunal and . . . these values, along with the first amendment values, would not be served if the fear of retaliation and reprisal effectively muzzled witnesses testifying in open court.") (internal quotations and citations omitted). Here, Plaintiff was called to testify truthfully about Defendant Thompson's conduct while on the bench, and the Court finds that such compelled and sworn testimony supports a finding that her speech involved a matter of public concern.  For the reasons stated above, the Court finds that Plaintiff has satisfied the second step of the *Garcetti/Pickering* analysis.

> **2.      Whether Plaintiff Spoke Pursuant to Her Official Duties and Balancing of Interests**

Defendant Thompson does not contest the first and third steps of the *Garcetti/Pickering* analysis – *i.e.*, whether Plaintiff spoke  pursuant to her official duties and whether Plaintiff's interest in commenting on the issue outweigh the interests of Defendant Thompson and the State.  *See Brammer-Hoelter*, 492 F.3d at 1202-03.  These two questions are to be resolved by the district court. *Id.*

Although the parties did not provide argument as to these additional steps in the *Garcetti/Pickering* analysis, the Court finds sufficient facts in the record to make a determination as

to these questions.  With regard to whether Plaintiff spoke pursuant to her official duties or as a private citizen, the Court finds that Plaintiff's testimony before the Council was not made in conjunction with her duties as Defendant Thompson's court reporter.  "When a government employee testifies truthfully, she is not simply performing his or her job duties."  *Reilly*, 532 F.3d at 231 (citing *Garcetti*, 547 U.S. at 423) (internal quotations omitted).  Rather, "the employee is acting as a citizen" and is bound by the dictates of the proceeding.  *See Reilly*, 532 F.3d at 231.  As Defendant Thompson's court reporter, it was Plaintiff's responsibility to accurately transcribe his court proceedings, not to appear before the Council and discuss the inappropriate acts she viewed while in the courtroom.  *See generally* Okla. Stat. tit. 20, § 106.4 (setting forth general duties of court reporters serving in Oklahoma state courts).  Accordingly, the Court finds Plaintiff was not acting pursuant to her official duties and that she has satisfied the first step of the *Garcetti/Pickering* analysis as a matter of law.

In balancing Plaintiff's speech "against an employer's interest in an efficient and disciplined work environment," *see Brammer-Hoelter*, 492 F.3d at 1207, the Court must arrive at a balance between the interests of Plaintiff as a citizen in commenting upon matters of public concern and the interests of the State and/or Thompson, as an employer, in promoting the efficiency of the public services.  *See Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007).  The Tenth Circuit has described the balancing prong as "a matter of great debate and little certainty," *see id.* at 1328 (citing law review articles explaining uncertainty produced by balancing analysis), but has provided courts with the following guidance:

> [T]he question is whether the employer has an efficiency interest which would justify it in restricting the particular speech at issue.  In performing the balancing, the statement will not be considered in a vacuum; *the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose.*

> Pertinent considerations include whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.  Arguably, the only public employer interest that can outweigh a public employee's recognized speech rights is the interest in avoiding direct disruption, by the speech itself, of the public employer's internal operations and employment relationships.

*See Brammer-Hoelter*, 492 F.3d at 1207 (internal quotations and citations omitted) (emphasis added). The employer bears the burden of proof and must present evidence "justifying its regulation" of the employee's speech.  *See id.*

Here, Defendant Thompson failed to present any evidence "justifying [his] regulation" of Plaintiff's speech.  There is no evidence demonstrating that Plaintiff's speech "impair[ed] discipline by superiors or harmony among co-workers, ha[d] a detrimental impact on close working relationships . . ., or impede[d] the performance of [Plaintiff's] duties." *Id.*  The Court therefore finds that Plaintiff's interests in responding to the subpoena and testifying about Defendant Thompson's actions in the courtroom outweigh any "efficiency interests" of the State and/or Defendant Thompson.  *See id.*  Accordingly, Plaintiff has satisfied the third step of the *Garcetti/Pickering* analysis.

The fourth and fifth steps of the *Garcetti/Pickering* analysis – *i.e.*, whether the speech was a substantial factor in a detrimental employment decision and whether the employer would have taken the same action even in the absence of the protected speech – will be submitted to the jury for determination.  Defendant Thompson's Supplemental Motion for Summary Judgment as to Plaintiff's § 1983 First Amendment claim is denied.

**B.      Tortious Interference with Employment Claim**

Plaintiff's Complaint alleges that Defendant Thompson "interfered with [Plaintiff's] employment with the State of Oklahoma by falsely advising the Court Administrator for the State of Oklahoma that she had been absent from work during the period October 27, 2003 through January 5, 2004 and that as a result she should be terminated from her position as his court reporter." (Compl. ¶ 15.) The Court construes Plaintiff's claim for "tortious interference with employment" as "tortious interference with employment contract."  In order to recover on such a claim, Plaintiff must show: (1) that she had a contractual right which was interfered with; (2) that the interference was wrongful and malicious; (3) that the interference was neither justified, privileged, nor excusable; and (4) that damage was proximately sustained as a result of the interference. *Johnson v. Nasca*, 802 P.2d 1294, 1297 (Okla. Civ. App. 1990).  This cause of action can only arise "when one who is not a party to a contact interferes with that contract by convincing one of the contracting parties to breach its terms." *Ray v. Am. Nat. Bank & Trust Co. of Sapulpa*, 894 P.2d 1056, 1060 (Okla. 1994).

It is undisputed that Defendant Thompson had the authority to terminate Plaintiff's employment as his court reporter.  (*See* Pre-Trial Order sec. III (stating "The following facts are admitted and require no proof: Defendant Thompson had the authority under 20 O.S. § 106.2 to terminate [Plaintiff's] employment as his court reporter for a lawful reason").)  Given Thompson's authority to terminate Plaintiff, Thompson cannot be considered as "one who is not a party to [Plaintiff's employment] contract," rendering Plaintiff unable to demonstrate this claim.  *See id.* Summary judgment is accordingly granted as to Plaintiff's tortious interference with employment contract claim.

C.      **Intentional Infliction of Emotional Distress Claim**

The statute of limitations for Plaintiff's intentional infliction of emotional distress claim is two years.  *See Chandler v. Denton*, 741 P.2d 855, 864 (Okla. 1987).  Because Plaintiff filed suit on June 2, 2005, Defendant Thompson contends judgment should be granted to him on Plaintiff's intentional infliction of emotional distress claim for all acts prior to June 2, 2003.  The Court finds Defendant Thompson's position well-founded and grants Defendant Thompson's supplemental motion for summary judgment as to this issue.  *See Seeber v. Williams Cos., Inc.*, 2006 WL 2524249, No. 04-CV-0451-CVE-PJC (N.D. Okla. Aug. 28, 2006) (unpublished) (holding that "plaintiff may rely only on events occurring after March 19, 2002 to show intentional infliction of emotional distress" when Plaintiff filed suit on March 19, 2004); *see also Marshall v. Nelson Electric, A Unit of General Signal*, 766 F. Supp. 1018, 1029 (N.D. Okla. 1991) (stating that, "absent some exception to the general rule," plaintiff's claim was barred "to the extent it is based on conduct that occurred before September 12, 1986" when plaintiff filed suit on September 12, 1988).[10]

D.      **Temporal Limitation of Plaintiff's Damages**

Defendant Thompson argues that Plaintiff's claim for monetary damages in the form of back and front pay should be limited to the time after the date of the alleged termination through the date of Defendant Thompson's resignation from his position on September 1, 2004.  Defendant Thompson made this exact argument in his prior summary judgment briefing before the Court.  In its March 4, 2008 Order, the Court declined to limit the period of Plaintiff's damages because Plaintiff argued that had she not been terminated, the number of appeal transcripts she prepared would not have changed

---

[10]  This ruling does not prohibit the introduction of evidence relating to acts occurring prior to June 2, 2003 to the extent that such evidence is relevant to the remaining claims against the State and Defendant Thompson.

after Defendant Thompson's resignation from the bench.  Plaintiff therefore contended that she would have continued to receive additional income from this source.  Again, the Court declines to limit Plaintiff's damages at this time.  Defendant Thompson may present this issue to the Court after evidence is presented at trial pursuant to Federal Rule of Civil Procedure 50.

## VI.  Conclusion

For the reasons stated herein, Plaintiff's Motion to Voluntarily Dismiss Tort Claims Against Defendant Thompson (Doc. 142) is DENIED; the State's Supplemental Motion for Summary Judgment (Doc. 137) is GRANTED IN PART and DENIED IN PART; and Defendant Donald Thompson's Supplemental Motion for Summary Judgment (Doc. 136) is GRANTED IN PART and DENIED IN PART.

**ORDERED THIS 21st DAY OF October, 2008.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**